IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | | |
|---|---|---|
| ROBERT LEE SMALLS, | ) | C/A No.: 0:05-2373-HFF-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| VICTOR BLUE, JR., C.O. OF | ) | |
| EVANS CORRECTIONAL | ) | |
| INSTITUTE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 2, 2006. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on May 3, 2006, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the motion for summary judgment on May 30, 2006.

1



Defendant's motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that on May 22, 2005 he was subjected to excessive use of force by the Defendant Blue. Plaintiff alleges that earlier in the day, Blue (a corrections officer) slammed the flap shut on his cell door, and in so doing struck the bridge of Plaintiff's nose. Plaintiff alleges that later that day, around 3:50 p.m., when Blue came by to serve him his dinner tray, he "dash[ed]" Blue with a cup of blue liquid on his lower abdomen area. Plaintiff alleges that this liquid was 90% water, 10% pen ink. Plaintiff alleges that Blue then sprayed him two times with pepper spray, following which the cell door was opened and Blue and a "Sgt. Ford" rushed in. Plaintiff alleges that as he was pinned down by Ford, Blue repeatedly punched him in his back and along his legs, and that he was "toss[ed] around" the room for one to two minutes. Plaintiff alleges he was then handcuffed by an "Ofc. Smith" and led out of the room, following which he was escorted to the SMU holding cell by Ford and Blue.

Plaintiff alleges that while he was being escorted to the SMU he was talking with Ford, when Blue elbowed him in the jaw. Plaintiff alleges that about 15 to 20 minutes after he was placed in the SMU holding cell, he was seen by a nurse, who told him he had a busted jaw and

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



chipped tooth. Plaintiff alleges his jaw was glued back together, and that he was put on a liquid diet for three and a half weeks. Plaintiff alleges he filed a grievance concerning this incident, and passed a lie detector test. Plaintiff alleges that "[t]his incident was uncalled for, because I was already in restraints." Plaintiff seeks monetary damages, and medical care for his teeth. Plaintiff has attached a copy of the grievance he filed to his Complaint. See generally, Verified Complaint, with attached Exhibit.

In support of summary judgment in the case, the Defendant Blue has submitted an affidavit wherein he attests that he is a corrections officer at the Evans Correctional Institution (ECI). Blue attests that on May 22, 2005, he was delivering Plaintiff his food tray, and that when he opened the service flap Plaintiff threw a cup of blue liquid onto his lower abdomen area. Blue attests that he immediately reacted by administering a one to two second burst of pepper spray, following which Sergeant Ford gave the order to open Plaintiff's cell and restrain him. Blue attests Plaintiff resisted being restrained, and that he and Ford were therefore forced to grab him and pin him down on the floor to handcuff his hands behind his back. Blue attests that, during this time, Plaintiff was struggling and may have sustained a scratch on his mouth area. Blue attests that he and Ford used only the reasonable and requisite amount of force necessary in order to restrain Plaintiff, who was resisting, and that neither he nor Ford ever purposely punched, kicked, or otherwise struck the Plaintiff during this time.

Blue attests that, after Plaintiff was restrained, he and Ford escorted Plaintiff out of his cell in order to take him to a holding cell where he would be seen by a nurse. Blue attests that Ford was on one side and he was on the other as they escorted Plaintiff to the holding cell, and that at no time did either he or Ford strike Plaintiff in the mouth. Blue attests that once they arrived with



the Plaintiff at the holding cell, he noticed a reddish scratch never Plaintiff's mouth that was beginning to bleed slightly. He then left Plaintiff in the holding cell and returned to his regular shift. Blue attests that Plaintiff's mouth may have been injured during their struggle in the cell due to his resisting, but that he is unaware of any other incident which may have caused the laceration to Plaintiff's mouth. See generally Blue Affidavit.

Fritz Ford has also submitted an affidavit, wherein he attests that during the incident in question he was a sergeant at ECI and was the supervising officer on the scene. Ford attests that at approximately 3:00 or 3:30 p.m., the Defendant Blue was feeding the B-Wing of the SMU, and that when Blue approached the Plaintiff's cell and opened his food flap, Plaintiff threw a liquid substance on Blue. Blue then pulled out his pepper spray and sprayed the Plaintiff. Ford attests that he was sitting inside the control room looking out on the wing when all of this took place, and that he then got up and reported to the wing to see what was going on. Ford attests that he saw that Blue had been doused with a liquid substance by the Plaintiff, and that he gave Plaintiff a direct order to come to the flap to be restrained, which he refused. Ford attests that he then told Blue and an Officer Tillman to open the cell door, and they then went inside and restrained the Plaintiff. Ford attests that when they escorted Plaintiff out of the cell he started fighting and broke loose, and that Blue and Tillman were directed to "taze him down" and advise Plaintiff to stop fighting. Ford attests that when they exited the B-Wing, he approached the control room to get the holding cell keys. Ford attests that when he turned back around, Plaintiff was on his knees with blood running from his mouth. Ford attests that he grabbed Plaintiff's arm and escorted him to the holding cell to be seen by medics.

Ford attests that Plaintiff never said anything to him during the time he escorted him

4



to the holding cell.  While Officer Tillman continued to watch the Plaintiff, all of the officers were called to the lieutenants office, at which time Blue started on his report.  Officer Smith reported back to the wing, and when the nurse was done with the Plaintiff, he escorted Plaintiff to his cell.  Ford attests that he never witnessed Blue or any other officer assault, strike, hit, or otherwise offensively touch the Plaintiff either during their attempt to restrain him in his cell or thereafter.  Ford attests that Plaintiff fought and resisted his and Officer Blue's attempts to restrain him in his cell, causing them to use force to restrain him by grabbing and pinning him down on the floor.  Ford attests that, in his opinion, Plaintiff must have sustained the three quarter inch laceration/scratch near his mouth either while in his cell trying to resist being handcuffed or after falling to the ground while he was being escorted to the holding cell.  See generally, Ford Affidavit.

The Defendant has also submitted an affidavit from Carol Allen-Warr, who attests that she is a registered nurse employed by the Department of Corrections.  Nurse Allen-Warr attests that she is the nurse who saw Plaintiff in the medical department of ACI on or around May 22, 2005, immediately following the incident involving Officers Blue and Ford.  Allen-Warr attests that she was called to check the Plaintiff, who was in the sick call area, and that after an assessment and speaking with the Plaintiff, treatment was provided for lacerations, with Plaintiff to be seen by the house medical doctor for a follow-up.  Allen-Warr attests that she does not recall the Plaintiff having stated that he was assaulted, but that during his assessment, had the Plaintiff offered information regarding such, an incident report would have been filed.  Allen-Warr attests that she cannot recall which officer was present at the time of the injury.

Allen-Warr further attests that per the medical records, Dr. Patel made a follow-up examination of the Plaintiff that reflected no complications or signs of infection.  Allen-Warr attests



that there was a small mouth injury and a tooth that was supposedly chipped, but that she does not recall a piece of the tooth being presented at the time of injury, and that even though the tooth was mentioned in the use of force statement that was filed, she cannot say for certain whether or not it was already chipped. No sutures were needed for Plaintiff's lacerations, and it is Allen-Warr's opinion that Plaintiff suffered no significant physical or mental injury as a result of his altercation with Blue and Ford. Allen-Warr attests that the laceration sustained by the Plaintiff was similar to a minor scratch, and most likely occurred as a result of his face incidently coming in contact with a sharp metal object, such as a bed post, rather than an elbow. In any event, Allen-Warr attests that the laceration was more of a minor scratch than a cut, and required no treatment other than her placing a common bandage upon it as one would use for a minor scratch or cut on ones hand. Plaintiff's medical records are attached to Allen-Warr's affidavit as Exhibit A. See generally, Allen-Warr Affidavit with attached Exhibits.

Finally, the Defendant has submitted an affidavit from Dr. Praven Patel, a physician employed by the Department of Corrections. Dr. Patel attests that he saw the Plaintiff on two occasions in May and June of 2005, around the time of the incident involving the Plaintiff and Officer Blue on May 22, 2005. Patel attests that Plaintiff was first seen by Nurse Warr, who found a small laceration on Plaintiff's mouth, about 3/4 cm., which was closed with a butterfly strip. Patel attests that he saw the Plaintiff the next day, and that his findings were the same. Patel attests that Plaintiff did not have any other complaints, and no other physical abnormal findings were found. Patel attests that having personally seen the Plaintiff as well as having reviewed his medical records of May 22, 2005, it is his opinion that Plaintiff suffered no significant physical or mental injury as a result of his altercation with Blue and Ford, and that the laceration sustained by the Plaintiff was



similar to a minor scratch and most likely occurred as a result of his face incidently coming into contact with a sharp metal object, rather than an assault by another person.  Patel further attests that the laceration was minor and was closed with a bandage similar to a common band-aid.  Patel attests that when he saw the Plaintiff on May 23, 2005, he was in no distress and needed no treatment other than the small bandage that had been placed on the minor laceration the previous day.  See generally, Patel Affidavit.

In opposition to summary judgment, Plaintiff has submitted his own affidavit, wherein he reasserts the allegations of his verified Complaint.  Plaintiff further attests that after he had been placed in restraints and was being let out of his cell by Ford and Blue, he had no injury at that time.  Plaintiff attests that when they were in the sally port leading to the holding cell, Ford walked off to get the holding cell keys, at which time Blue elbowed him in the jaw.  Plaintiff attests that that is when he sustained the injury to his mouth.  Plaintiff attests that Ford then turned around and helped him up and escorted him to the holding cell.  See Plaintiff's Exhibit A.  Plaintiff has also provided copies of Blue and Ford's affidavits, as well as a printout of the Department of Corrections medical summary for the dates in question.  This summary, which is marked as Plaintiff's Exhibit D, shows that Plaintiff was seen on May 22, 2005 in the SMU sick room, at which time a laceration on his left mouth corner approximately 3/4 cm. was noted.   That medical report also reflects that the range of motion of Plaintiff's jaw appeared to be normal, with slight swelling of the injured area but no internal tissue damage noted.  It was also noted that Plaintiff's left upper lateral incisor had a chip.  This medical summary further reflects that Plaintiff was seen again on May 23, 2005, at which time it was noted that the left side of Plaintiff's lip was covered with a steristrip, with no loose teeth being noted.  See Plaintiff's Exhibit D.



**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

When reviewing allegations of excessive force, the Court must consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; see also United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.



1994); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v. Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).

Here, Plaintiff's only claim for excessive use of force concerns the Defendant Blue allegedly elbowing him in the mouth while he was in restraints for no justifiable reason. The prior conduct of the Defendant while Plaintiff was being taken into custody in his cell is not at issue. While Blue denies Plaintiff's allegation, Ford's affidavit, wherein he attests that he had his back to the Plaintiff, and that when he turned back around Plaintiff was on his knees with blood coming from his mouth, is sufficient for purposes of summary judgment to give rise to a genuine issue of fact as to whether this incident occurred. This Court cannot choose to believe the averments of fact contained in the Defendant's affidavit and disregard those of the Plaintiff or the inference that could be derived from Ford's affidavit. Gray v. Spillmen, 925 F.2d 90, 95 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). At summary judgment, where a conflict from a set of given facts exists, this Court is required to consider the facts presented, and all inferences to be drawn from the facts, in the light most favorable to the non-moving party. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Therefore, assuming for purposes of summary judgment that the Defendant Blue did elbow Plaintiff in the mouth while he was in restraints, the question before the Court is whether the evidence is sufficient to give rise to a genuine issue of fact as to whether Plaintiff's *constitutional rights* were violated as a result.

After careful consideration and review of the evidence and arguments presented, the



undersigned does not find that the material before the Court is sufficient to give rise to a constitutional excessive force claim, and that the Defendant is therefore entitled to summary judgment. The mere fact that Plaintiff may have been struck by Officer Blue, even if such conduct was unnecessary, does not mean that Plaintiff's constitutional rights were violated. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]. In order to proceed with his excessive force claim, Plaintiff must show not only that Blue acted with a sufficiently culpable state of mind (an issue on which there may be a genuine question of fact), but also that his injury was sufficiently serious to establish constitutionally excessive force. Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998), (citing Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). Here, the medical evidence submitted in this case shows that Plaintiff suffered only a minimal physical injury as a result of this confrontation. Indeed, Plaintiff's own medical evidence, submitted with his memorandum in opposition to summary judgment, confirms that the injury he suffered, even if suffered in the manner Plaintiff alleges, were no more than de minimis in nature. Such an injury fails to provide support for a constitutional claim. See Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]; Norman v. Taylor, 25 F.3d at 1263 [absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury de minimis]. While Plaintiff claims that his jaw was broken and had to be glued back together, this assertion is flatly disputed by his own medical evidence. The Court is not required to accept this claim, even at summary judgment. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.

10



1987) [even though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to "accept as true legal conclusions or unwarranted factual inferences."].

Finally, in making the findings set forth hereinabove, the undersigned does not intend to minimize Plaintiff's complaint that, even after he was restrained, Blue elbowed him in the mouth for no reason, again assuming this allegation to be true for purposes of summary judgment. However, while Plaintiff may have some state law claim with regard to the conduct of the Defendant, or some further administrative remedy to pursue, the undersigned does not find that Plaintiff has submitted sufficient facts to raise a genuine question as to whether the amount of force used violated his *constitutional rights*. Daniels v. Williams, 474 U.S. 327, 328-336 (1986) [noting that jailers may owe a special duty of care to those in their custody under state tort law, but rejecting the contention that the Constitution embraces such a tort law concept]. Therefore, this claim is subject to dismissal. Plaintiff should pursue this claim, if at all, in state court.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

October 2, 2006

11



**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  \*\*\*  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  \*\*\*   We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  \*\*\*  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").  This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.  See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

12

